IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Richmond Division)

| | |
|---|---|
| LUMBER LIQUIDATORS LEASING, LLC et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 3:13-cv-00313-JRS ) |
| SEQUOIA FLOORINGS, INC., et al. | ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
AND INSUFFICIENT SERVICE OF PROCESS**

COMES NOW *by Special Appearance*, Defendants Sequoia Floorings, Inc., Daniel Benchetrit, and Gerard Benchetrit, by counsel, and presents this Memorandum in Support of their Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process pursuant to Fed. R. Civ. P. 12(b)(2) and (5) and state as follows:

**FACTS**

A. Parties.

Upon information and belief, Plaintiff Lumber Liquidators Leasing, LLC ("Leasing") is a Delaware limited liability company with a principal place of business in Toano, Virginia and Plaintiff Lumber Liquidators, Inc. ("LLI") is a Delaware corporation with a principal place of business in Toano, Virginia. (Compl. ¶¶ 1 and 2.)

Defendants Daniel Benchetrit and Gerard Benchetrit (collectively referred to as the "Individual Defendants") are individuals residing at all relevant times in Canada. (D. Benchetrit Decl. ¶ 1; G. Benchetrit Decl. ¶ 1.)

Defendant Sequoia Floorings, Inc. ("Sequoia") is a Canadian corporation with its principal place of business in Laval, Quebec. (D. Benchetrit Decl. ¶ 4; G. Benchetrit Decl. ¶ 4.)

**B. Background.**

Plaintiffs allege, in essence, that Leasing entered into two agreements: (1) a September 28, 2011 Asset Purchase Agreement ("APA") with Defendants and (2) a September 28, 2011 Escrow Agreement with Sequoia and SunTrust Bank ("SunTrust") (the "Escrow Agreement"). (Compl. ¶¶ 7 and 10.) LLI was not a party to either of the agreements. Under the APA, Defendants sold Leasing certain assets located at "Sequoia Floorings Inc. Shanghai Representative Office" located in Shanghai, People's Republic of China. (Compl. Ex. A ¶¶ 1.1 and 12.1.) The APA provided that the provisions would be governed by the laws of the Province of Quebec and the parties submitted to the non-exclusive jurisdiction of the courts of the Province of Quebec. (Compl. Ex. A ¶¶ 11.6 and 11.7.) Under the Escrow Agreement, Leasing deposited part of the purchase price totaling the sum of $120,000 to be held by SunTrust as the escrow agent in connection with the transaction (the "Escrow Amount"). (Compl. Ex. B.) Under the Escrow Agreement, Leasing and Sequoia submitted to the exclusive jurisdiction of this Court for any issues that arise under the Escrow Agreement pertaining to the Escrow Amount. (Compl. Ex. B. ¶ 7.9.)

**C. Claims against Defendants.**

Plaintiffs have filed a two-count Complaint. Count I is for express indemnity relating to the APA and seeks an award of $500,000. Count II, titled "Disbursement of Escrow Amount," appears to be a declaratory judgment action that seeks judgment

totaling $500,000 and also seeks for this Court to determine the rights and liability of the parties under the Escrow Agreement.

### D. Defendants Daniel and Gerard Benchetrit's contacts with Virginia are de minimis and limited.

Neither of the Individual Defendants reside in Virginia. (D. Benchetrit Decl. ¶ 1; G. Benchetrit Decl. ¶ 1.) Sequoia's principal place of business is in Laval Quebec. (D. Benchetrit Decl. ¶ 1; G. Benchetrit Decl. ¶ 1.) Defendants have never had any offices in Virginia, have never owned or rented any property in Virginia, have never had any employees, sale personnel, agents or independent contractors in Virginia, have never advertised in any Virginia newspapers or magazines or other Virginia print, radio or television media nor have they ever had any bank accounts or telephone listings in Virginia. (D. Benchetrit Decl. ¶¶ 4, 9-13, 19; G. Benchetrit Decl. ¶¶ 4, 9-13, 20.) As such, the Complaint should be dismissed as to the Individual Defendants for lack of personal jurisdiction.

### E. Service of Process on Defendants was insufficient.

Additionally, this Court should dismiss this matter as to all the parties as Plaintiffs' attempted service of process on the Defendants was insufficient.

## ARGUMENT

### A. The Individual Defendants should be dismissed under Federal Rule 12(b)(2) as they are not subject to the personal jurisdiction of this Court.

Federal Rule of Civil Procedure 12(b)(2) requires dismissal when the court lacks personal jurisdiction over the defendant. Resolution of personal jurisdiction challenges involves a two-step inquiry: first, the court must determine whether the forum state's long-arm statute authorizes jurisdiction over the defendant; second, the court must

3

determine whether due process bars the exercise of personal jurisdiction. *RZS Holdings AVV v. PDVSA Petroleos S.A.*, 293 F. Supp. 2d 645, 648 (E.D. Va. 2003). Where a defendant challenges the exercise of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681, 683-84 (E.D. Va. 1999).

To establish personal jurisdiction over either of the Individual Defendants, neither of whom reside in Virginia, this Court must first determine whether jurisdiction is authorized under Virginia law. Though the analysis of personal jurisdiction is normally a two-step inquiry, requiring the application of both statutory and constitutional components, since the Virginia Long-Arm Statute (Va. Code § 8.01-328.1) extends personal jurisdiction as far as the Due Process Clause permits, this inquiry is "often merged into a question of whether asserting jurisdiction violates the Due Process Clause." *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002); *RZS Holdings, AVV v. Commerzbank, AG*, 279 F. Supp. 2d 716, 720 & n.2 (E.D. Va. 2003). The key factor of statutory jurisdiction is purposeful activity in the Commonwealth. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Accordingly, it is necessary to examine carefully the nature of defendants' contacts with Virginia in order to determine whether they may fairly be subjected to suit. *Superfos Invs., Ltd. v. First Miss Fertilizer, Inc.*, 774 F. Supp. 393, 398 (E.D. Va. 1991). To do this, the Court must first examine whether there were any activities in Virginia giving rise to the action, and any additional contacts that are unrelated to the action, as these different types of contacts are judged by different standards. *Superfos*, 774 F. Supp. at 398.

Where personal jurisdiction is exercised over a defendant in a lawsuit arising out of or related to the defendant's contacts with the forum, the forum is said to be exercising "specific jurisdiction." Id. at 398 n.3. "General jurisdiction" is the exercise of personal jurisdiction where the defendant's contacts with the forum do not give rise to or relate to the suit. *Id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General jurisdiction requires "continuous and systematic" contacts with the forum, compared to the less stringent standard that applies to specific jurisdiction. *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1130 (4th Cir. 1986); *see Helicopteros*, 466 U.S. at 415, 416.

### 1. Specific Personal Jurisdiction does not exist over the Individual Defendants.

The Fourth Circuit has established a three-part test to determine whether exercise of specific personal jurisdiction is appropriate. This test requires the Court to examine: "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at this State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citations omitted).

As to the first prong of this test, the Fourth Circuit has provided a number of factors to consider in determining what constitutes "purposeful availment":

(a) Whether the defendant maintains offices or agents in the forum state;
(b) Whether the defendant owns property in the forum state;
(c) Whether the defendant reached into the forum state to solicit or initiate business;
(d) Whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

5

  (e)  Whether the parties contractually agreed that the law of the forum state would govern disputes;

  (f)  Whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

  (g)  The nature, quality and extent of the parties' communications about the business being transacted; and

  (h)  Whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 at 278 (4th Cir. 2009).

  There is nothing in the Complaint to establish personal jurisdiction over the Individual Defendants. The sole allegation as to jurisdiction and venue does not pertain to the Individual Defendants: "Lumber Liquidators and Sequoia irrevocably submitted to the exclusive jurisdiction of this Court." (Compl. ¶ 6.) The only possible basis for the allegation that Sequoia has submitted to the "exclusive jurisdiction of this Court" is the Escrow Agreement, to which the Individual Defendants are not parties to. (D. Benchetrit Decl. ¶ 6; G. Benchetrit Decl. ¶ 6.) As established by the accompanying Declarations, neither of the Individual Defendants has ever had an office, agent, or property in Virginia. (D. Benchetrit Decl. ¶¶ 1, 10, 19; G. Benchetrit Decl. ¶¶ 1, 10, 20.) The corporate defendant, Sequoia, is not licensed to do business in Virginia and has no place of business in Virginia. (D. Benchetrit Decl. ¶ 4, 19; G. Benchetrit Decl. ¶ 4, 20.) Nor have any of the Defendants advertised their product in Virginia or targeted ads or promotional materials to Virginia. (D. Benchetrit Decl. ¶¶ 11-12; G. Benchetrit Decl. ¶¶ 11-12.) Notably, the only agreement that provided for jurisdiction in this Court was the Escrow Agreement that the Individual Defendants did not sign. (D. Benchetrit Decl. ¶ 6; G. Benchetrit Decl. ¶ 6.) In short, the *only* possible connection between Virginia and the Individual Defendants relates solely to any business Sequoia has with Leasing.

Further, the Individual Defendants cannot be subjected to personal jurisdiction in their individual capacities exclusively based on acts done as a corporate officer of Sequoia. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 380-381 (E.D. Va. 2003) ("A corporate agent is not subject to personal jurisdiction in his individual capacity under the long-arm statute solely based upon his status as a corporate officer or agent."). Therefore to find jurisdiction based on any corporate contacts, a plaintiff must allege and prove direct personal involvement by individuals. *See id.* (finding a basis for jurisdiction due to allegations made by plaintiff regarding defendant's individual involvement in the torts alleged or that the wrong complained of actually occurred in Virginia). Since there are no allegations that the Individual Defendants have done something wrong under the long-arm statute, they cannot be subjected to jurisdiction in Virginia.

**b.    Plaintiff's Claims Do Not Arise Out of Activities Directed at Virginia.**

Under the second prong of the three-part test, the Court must consider whether plaintiff's claims arise out of activities directed at Virginia. *ALS Scan.*, 293 F.3d at 712. Here, they do not. The Individual Defendants are citizens and residents of Canada. (D. Benchetrit Decl. ¶ 1; G. Benchetrit Decl. ¶ 1.) The Complaint filed in this action makes no mention of what connection, if any, the Individual Defendants have to Virginia and this District. Furthermore, the Individual Defendants negotiated all terms from Canada, the only in-person meeting took place in Canada and the place of performance is the Republic of China. (D. Benchetrit Decl. ¶¶ 8, 17, 21; G. Benchetrit Decl. ¶¶ 8, 18-19, 22.) Accordingly, plaintiff cannot satisfy the second prong of the three-part test because his claims do not arise out of activities directed at Virginia.

7

      **c.**      **The Exercise of Jurisdiction Would Not Be Constitutionally Reasonable.**

None of the Individual Defendants' activities are or were substantially related to Virginia. Accordingly, plaintiff cannot satisfy the third prong, or any prong, of the three-part test, and Virginia cannot exercise specific personal jurisdiction over the Individual Defendants. *ALS Scan.*, 293 F.3d at 712; *Superfos*, 774 F. Supp. at 398-99.

      **2.**      **This Court lacks general personal jurisdiction because the Individual Defendants do not have continuous and systematic contacts with Virginia.**

"Even when a cause of action does not arise out of or relate to the [non-resident defendant's] activities in the Forum State, due process is not offended by the States subjecting the [non-resident defendant] to its in personam jurisdiction when there are sufficient contacts between the States and the [non-resident defendant]." *Helicopteros*, 466 U.S. at 414. These contacts must be "continuous and systematic" in order to support general personal jurisdiction over the Individual Defendants. *Superfos*, 774 F. Supp. at 399. The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The "foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." *Id.* at 297. Moreover, "technology cannot eviscerate the constitutional limits on a State's power to exercise jurisdiction over a defendant." *ALS Scan*, 293 F.3d at 711.

The Individual Defendants lack sufficient minimum contacts with Virginia so as to predicate any finding of personal jurisdiction. Indeed, their sole contacts with the Commonwealth are limited to their roles as corporate officers of a Canadian corporation.

8

(D. Benchetrit Decl. ¶¶ 3, 9-14, 19-21; G. Benchetrit Decl. ¶¶ 3, 9-14, 19-22.) Such contact falls well below the minimum contacts required to not offend the traditional notions of fair play and substantial justice described in *International Shoe*. Based on the facts presented in this case, Defendants' contacts with Virginia do not rise to the level of "continuous and systematic" as required by due process. Accordingly, the Court may not exercise in personam jurisdiction over any of the Defendants.

### B. Plaintiffs' did not serve the Defendants in accordance with the Hague Convention.

Federal Rules of Civil Procedure 4(f)(1) and 4(h)(2) require Plaintiffs to effectuate service in accordance with international agreement, such as the Hague Convention, if applicable. "The Hague Convention expressly applies 'in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.'" *Fleming v. Yamaha Motor Corp., USA*, 774 F. Supp. 992, 994 (W.D. Va. 1991) (quoting Hague Convention, November 15, 1965, Article 1, 20 U.S.T. 361, 658 U.N.T.S. 163). Because the Hague Convention has the status of a self-executing treaty, the Articles from the Convention supersede state law where there is a conflict. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575-76 (4th Cir. 1983); *See also Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("by virtue of the Supremacy Clause, U.S. Const., Art. VI, the [Hague] Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies.") The plaintiff has the burden to show proper service of process. *DIRECTTV, Inc. v. Mullins*, 2004 U.S. Dist. LEXIS 8576 (W.D. Va. May 14, 2004) (quashing service of process where the return of service was defective on its face by failing to show it was made at the defendants home or usual place of abode).

Under Article 5 of the Hague Convention service is to be effectuated by the Central Authority of the State by "a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." Plaintiffs purportedly served the summons on Defendants pursuant to the Hague Convention by transmitting the documents to Canada's Central Authority who were then supposed to serve in accordance with Québec law. The Québec Rules of Civil Procedure provide that service may be effectuated by personal delivery, at a person's residence by leaving a copy with a reasonable person, or if no known domicile is within Québec, which is not the case here, then by leaving a copy in a sealed envelope addressed to the person for whom it is intended at the person's business, "speaking to a reasonable person in charge thereof." Q.R.S. C-25, § 123 (a copy of the section is attached hereto for the Court's reference). For a corporation, service must be made by delivering a copy to the head office "by speaking to one of the company's senior officers or person in charge of the establishment." Q.R.S. C-25, § 130 (a copy of the section is attached hereto for the Court's reference).

In this case, Plaintiffs addressed the summons to the Individual Defendants at Sequoia's corporate address and failed to attempt service at each party's residence as required by law. *Labelle v. Martin*, 2012 U.S. Dist. LEXIS 121016, 5-6 (W.D.N.C. Aug. 27, 2012) (finding that service attempts at an address where the defendant did not reside was a violation of Canadian law). While the return of service [Doc. 10, P. 17-19, 33-35] appears to indicate the person served (Carolyn Woodruff) was a "person in charge of the business at the time of serving," that is false as she is an accounting clerk, not a manager or officer, making their attempted service ineffective. (D. Benchetrit Decl. ¶ 18; G.

Benchetrit Decl. ¶ 17.) Additionally the return of service fails to state that the process server spoke to a "reasonable person in charge" of the office as required under Q.R.S. C-25, § 123. Additionally, Plaintiffs did not properly name Gerard Benchetrit in their Complaint or the Summons.

In regards to the attempts to serve Sequoia, the Plaintiffs again failed to have a copy delivered to a senior officer or person in charge of Sequoia and instead delivered it to an accounting clerk who is neither a senior officer nor a person in charge of Sequoia. (Doc. 10, P. 1-3; D. Benchetrit Decl. ¶ 18; G. Benchetrit Decl. ¶ 17.) Nor did they try serving the Individual Defendants in their capacity of officers of Sequoia. Therefore service was ineffective on Sequoia.

## CONCLUSION

The Individual Defendants have not submitted to the personal jurisdiction of Virginia. They did engage in any "persistent course of conduct" or "derive substantial revenue from goods used or consumed or services rendered" within Virginia. Additionally they do not have sufficient minimum contacts with Virginia and continuance of this lawsuit would offend traditional notions of fair play and substantial justice. As the Individual Defendants do not have sufficient contacts with Virginia and have not agreed to this Court's jurisdiction, they cannot have reasonably anticipated being hauled into court here. Additionally, the service of process was deficient on all defendants since Plaintiffs did not properly serve the Individual Defendants at their home nor did they properly serve Sequoia by dropping off the documents at the office without speaking or delivering same to a corporate officer or management.

On the basis of the foregoing, Defendants Sequoia Floorings, Inc., Daniel

11

Benchetrit, and Gerard Benchetrit respectfully request this Court to grant their Motion, dismiss this action as against them with prejudice and for any further relief deemed just and proper by this Court.

Respectfully submitted,

By: /s/ Rachelle E. Hill
William F. Krebs, Va. Bar No. 17347
Rachelle Hill, Va. Bar No. 74996
wkrebs@beankinney.com
rhill@beankinney.com
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., Seventh Floor
Arlington, VA 22201
Phone: 703-525-4000
Fax: 703-525-2207
*Counsel for Defendants Sequoia Floorings, Inc., Daniel Benchetrit and Gerard Benchetrit*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of November 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

Patrick R. Hanes (VSB No. 38148)
W. Alexander Burnett (VSB No. 68000)
WILLIAMS MULLEN
200 S. 10th Street, Suite 1600 (23219)
P.O. Box 1320
Richmond, VA 23218-1320
Phone (804) 420-6000
Fax: (804) 420-6507
aburnett@williamsmullen.com
phanes@williamsmullen.com
*Counsel for Plaintiffs*

                                              /s/ Rachelle E. Hill
                                              Rachelle E. Hill