**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

LUMBER LIQUIDATORS LEASING, LLC, et al.

      Plaintiffs,

v.                                                                          CASE No.: 3:13cv313

SEQUOIA FLOORING, INC., et al.

      Defendants.

**PLAINTIFFS LUMBER LIQUIDATORS LEASING, LLC'S AND
LUMBER LIQUIDATORS, INC.'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Lumber Liquidators Leasing, LLC ("LLL") and Lumber Liquidators, Inc. ("LLI") (collectively, "Lumber Liquidators"), by counsel, submit this Memorandum in Opposition to Defendants Sequoia Flooring, Inc.'s ("Sequoia"), Daniel Benechetrit's, and Gerard Benchetrit's (collectively, "Defendants") Motion to Dismiss.

**INTRODUCTION**

From at least 2005 until 2011, Lumber Liquidators purchased wood flooring and accessories from Sequoia. (Declaration of Daniel E. Terrell at ¶ 3, a copy of which is attached as Exhibit A.) To assist with sourcing wood flooring and accessories from China, Sequoia owned and operated a "Shanghai Representative Office" in Shanghai, China. (Terrell Declaration at ¶ 4.) Between January 2009 and September 2011, records show that Lumber Liquidators purchased more than $380,000,000.00 of wood flooring and accessories from Sequoia. (Terrell Declaration at ¶ 5.)

-1-

As employees, owners, and controlling shareholders of Sequoia, Daniel and Gerard Benchetrit (the "Individual Defendants") were aware of, and substantially involved in, the relationship and many transactions between Sequoia and Lumber Liquidators. (Terrell Declaration at ¶ 6.) Daniel Benchetrit was Sequoia's President and Director at the time of the Asset Purchase Agreement. (Terrell Declaration at ¶ 7.) Gerard Benchetrit was Sequoia's Secretary and Director at the time of the Asset Purchase Agreement. (Terrell Declaration at ¶ 8.) Together, Daniel and Gerard Benchetrit owned approximately 90% of the outstanding Class A (voting) capital stock of Sequoia. (Terrell Declaration at ¶ 9.)

Throughout the entire relationship between Sequoia and Lumber Liquidators, Lumber Liquidators was located in Colonial Heights and/or Toano, Virginia. (Terrell Declaration at ¶ 10.) Over the course of the relationship, the Individual Defendants either sent or received thousands of emails to or from Lumber Liquidator employees in Virginia. (Terrell Declaration at ¶ 11.) The Individual Defendants also took part in numerous phone calls with employees of Lumber Liquidators in Virginia. (Terrell Declaration at ¶ 12.) Additionally, the Individual Defendants traveled to Virginia on multiple occasions. (Terrell Declaration at ¶ 13; Declaration of Tom Sullivan at ¶ 3, a copy of which is attached as Exhibit B.)

In September 2011, Lumber Liquidators and Sequoia entered into two agreements to facilitate the purchase by Lumber Liquidators of Sequoia's Shanghai Representative Office. (Compl. ¶¶ 7, 10.) (A copy of the Asset Purchase Agreement and Escrow Agreement are attached as Exhibits C and D, respectively.) The Individual Defendants signed the Asset Purchase Agreement, individually, as shareholders of Sequoia. (*See* Asset Purchase Agreement at 1.)

Pursuant to the Asset Purchase Agreement, all three Defendants agreed to indemnify and

defend Lumber Liquidators from, and to reimburse Lumber Liquidators for, any and all losses that Lumber Liquidators incurred as a result or in connection with any and all obligations of the Defendants.  (Compl. ¶ 9.)   The Escrow Agreement provided that a portion of the purchase price (the "Escrow Amount") would be used to reimburse Lumber Liquidators for product claims or Defendants' indemnity obligations.  (Compl. ¶ 11.)  At the closing of the Asset Purchase Agreement, Lumber Liquidators deposited the Escrow Amount with SunTrust Bank (the "Escrow Agent") to be held and disbursed in accordance with the Asset Purchase Agreement and the Escrow Agreement.  (Compl. ¶ 8.)

Lumber Liquidators subsequently incurred losses as a result of Sequoia's obligations. (Compl. ¶ 13.)  Specifically, Sequoia supplied materials to Lumber Liquidators that had various manufacturing related issues and failed to comply with Lumber Liquidators' required specifications.  (Compl. ¶ 14.)  As a result of these issues, Lumber Liquidators incurred losses due to claims from Lumber Liquidators' customers resulting directly from these issues with Sequoia's products (the "Losses").  (*Id*.)  Lumber Liquidators now seeks to enforce its obligations under the Asset Purchase Agreement and Escrow Agreement.  (*See generally* Compl.)

## STANDARD OF REVIEW

Federal courts, including the Fourth Circuit Court of Appeals, employ a two-part test to determine whether personal jurisdiction exists over a non-resident defendant. *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).  Personal jurisdiction is only present if "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993).  "Virginia's long-arm statute extends personal jurisdiction to the fullest extent

permitted by due process." *Coastal Video Commc'ns Corp. v. The Staywell Corp.*, 59 F.Supp. 2d 562, 565 (E.D. Va. 1999). As a result, in Virginia the two-part test effectively merges into a single consideration of whether the exercise of personal jurisdiction is consistent with due process principles. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).

For an exercise of personal jurisdiction to be consistent with constitutional due process requirements, a defendant must have sufficient "minimum contacts" with the forum state. A defendant cannot be forced to defend himself in the forum state in violation of "traditional notions of fair play and substantial justice." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers,. Inc.*, 334 F. 3d 390, at 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under *International Shoe* and its progeny, there are two kinds of in personam jurisdiction, either "general" or "specific." *Coastal*, 59 F.Supp.2d at 565.

Specific jurisdiction exists "when the [defendant's] contacts relate to the cause of action and create a substantial connection with the forum state." *Diamond Healthcare*, 229 F.3d at 450. "In determining whether specific jurisdiction exists, [a court will] consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Coastal*, 59 F.Supp. 2d 562, 565 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-712 (4th Cir.2002)). This test requires both that the claims arise out of the defendant's contacts with the forum state, and that, given those contacts, it would be reasonable for the court to exercise jurisdiction over the defendant.

In contrast, "[g]eneral personal jurisdiction is exercised where the matter is not one

arising out of or related to the nonresident defendant's contacts with the forum." *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, at 414, n.9 (1984).  Instead, general jurisdiction arises out of the defendant's quantity and quality of contacts with the forum state. *Id.*  General jurisdiction is appropriate when a nonresident defendant has contacts with the forum state that are "continuous and systematic." *Coastal*, 59 F.Supp. 2d 562, 565 (quoting *ALS Scan*, 293 F.3d at 711-712).

Although the burden is generally on a plaintiff to prove the existence of a ground for jurisdiction by a preponderance of the evidence, *Atlantic Asset Management Group v. CSIRA*, 328 F.Supp.2d 614, 617 (E.D.Va. 2004), "[i]f the court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing . . . 'the plaintiff need only make a *prima facie* showing of personal jurisdiction.'"  *Id.* (quoting *Carefirst of Md., Inc. v. Carefirst Preg. Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see also In re Tamoxifen Citrate Antitrust Litig.*, 262 F.Supp.2d 17, 21 (E.D.N.Y 2003) ("When a motion to dismiss is brought before any discovery has been conducted, only a *prima facie* showing of personal jurisdiction is required to defeat the motion, . . . , and plaintiffs may rely on the complaint, affidavits, and other supporting materials to satisfy their burden.").  Furthermore, "the court must take all disputed facts and reasonable inferences in favor of the plaintiff when deciding the motion to dismiss" for lack of personal jurisdiction.  *Atlantic Asset Management Group*, 328 F.Supp.2d at 617.

## ARGUMENT

In their Memorandum in Support of their Motion to Dismiss, the Individual Defendants do not allege that they have not had any contacts with Virginia.  Rather, they argue that their contacts with the jurisdiction—which, in fact, are both continuous and systematic—cannot

subject them to personal jurisdiction because the contacts were related to their employment and ownership of Sequoia. (*See* Def. Mem. in Supp. at 6.)  The Individual Defendants misunderstand the law.  In fact, the Individual Defendants cannot be shielded from personal jurisdiction simply because their contacts with the forum were in their capacity as employees or shareholders.

Moreover, the Individual Defendants are subject to specific jurisdiction as Lumber Liquidators' cause of action arises directly out of the indemnification provision of the Asset Purchase Agreement, which requires the Individual Defendants to indemnify, protect, defend, exculpate and hold Lumber Liquidators harmless for claims arising out of products purchased by Lumber Liquidators prior to the acquisition.  Based on this agreement, the Individual Defendants should reasonably have anticipated being haled into court in Virginia, and therefore subjecting the Individual Defendants to jurisdiction in Virginia does not violation the notions of fair play and substantial justice.

Finally, service of process was valid under the Hague Convention, and Defendants arguments otherwise are without merit.  For these reasons, as more fully argued below, Defendants' Motion should be denied.

## I.    The Individual Defendants are Subject to Both General and Specific Jurisdiction.

### A.    The Individual Defendants are not Immune from Jurisdiction in Virginia Merely Because their Contacts With the Commonwealth were Made on Behalf of Sequoia.

Defendants incorrectly argue that "the Individual Defendants cannot be subjected to personal jurisdiction in their individual capacities based on acts done as a corporate officer of Sequoia." (Def. Mem. in Supp. at 7.)  In support of their argument, Defendants cite to *D'Addario v. Geller*, 264 F. Supp. 2d 367 (E.D. Va. 2003).  Tellingly, Defendants' quote from *D'Addario* does not support the very proposition for which it was cited by Defendants.  As the

quote included by Defendants states, "[a] corporate agent is not subject to personal jurisdiction in his individual capacity under the long-arm statute solely based on his *status* as a corporate officer or agent." *D'Addario*, 264 F. Supp. 2d at 380–81.  Stated differently, this quote means that the contacts of a company are not attributable to all of the company's officers or agents if those officers or agents did not have contacts with the forum. *Id*. at 381.

A defendant is not, however, "immune from jurisdiction in Virginia merely because her contacts with the Commonwealth were made ostensibly on behalf of [a corporation]." *D'Addario*, 264 F. Supp. 2d at 381 (quoting *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002).  *See also Charter Commc'ns VI, LLC v. Eleazer*, 398 F. Supp. 2d 502, 505 (S.D.W. Va. 2005) ("It is clear that under federal law, the status of a defendant as an employee of a corporation alleged to have acted improperly does not shield him from personal jurisdiction."). Jurisdiction is proper if a defendant has sufficient contacts with Virginia, "*even if those contacts were made ostensibly on behalf of [the corporation]*."  *D'Addario*, 264 F. Supp. 2d at 381 (emphasis added).

The relevant inquiry is not whether the individual acted in his corporate capacity or in his individual capacity.  *See Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482 (1984) ("[A] defendant's] status as [an] employee[] does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."); *D'Addario*, 264 F. Supp. 2d at 381.  Rather, "the controlling issue is simply whether the non-resident defendant, whatever role he may have occupied, had such 'minimum contacts.'" *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1058 (4th Cir. 1983).

Here, Plaintiffs do not contend that the Individual Defendants are subject to personal jurisdiction based on their *status* as corporate officers of Sequoia.  Rather, the Individual

Defendants are subject to personal jurisdiction based on their numerous contacts with the jurisdiction.  The Individual Defendants' contacts with Virginia span over seven years.  (Terrell Declaration at ¶ 3.)  The Individual Defendants exchanged thousands of emails with Lumber Liquidators employees in Virginia.  (Terrell Declaration at ¶ 11.) The Individual Defendants also participated in regular phone calls with Lumber Liquidators' employees in Virginia. (Terrell Declaration at ¶ 12.)  Additionally, Gerard Benchetrit traveled to Lumber Liquidators in Virginia approximately four to six times per year from at least 2005 until March 2011. (Terrell Declaration at ¶ 13.)  Daniel Benchetrit traveled to Lumber Liquidators in Virginia on approximately six separate times during the relationship between Sequoia and Lumber Liquidators. (Sullivan Declaration at ¶ 3.)  Based on these contacts alone, the Individual Defendants are subject to personal jurisdiction in Virginia.

> **B.    The Individual Defendants' Agreement to Indemnify Lumber Liquidators Provides a Basis for Specific Jurisdiction.**

Next, the Defendants argue that the Plaintiffs' claims do not arise out of activities directed at Virginia (Def. Mem. In Supp. at 7); however, each of the Defendants agreed to indemnify Lumber Liquidators for products that they sold to Lumber Liquidators in Virginia, where Defendants knew a large amount of the product was both warehoused and sold to the end user, and for which Lumber Liquidators—and the Individual Defendants by extension—would likely face claims in Virginia. Based on their agreement to indemnify Lumber Liquidators for claims arising out of the sale of products in Virginia, the Individual Defendants are subject to personal jurisdiction in Virginia.

Courts have often exercised personal jurisdiction over nonresident defendants on the basis of the defendants' execution of a guaranty agreement related to the forum. *See State Bank of Alleghenies v. Hudnall*, 62 F.3d 1415, 1415 (W.D. Va. 1995) ("Given that the bank and the

borrower were both in Virginia, and that the guaranty was recognized as a condition for the loan, the guarantor should have been on notice that his contacts were such that in the event of a loan default, litigation would likely take place in Virginia."); *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir.1982) ("[G]uaranties, when signed by a person with an economic interest in the corporation, furnished the necessary minimum contacts."); *Western Franklin Mills Corp. v. FMG, Inc.*, Civ. A. Nos. 91–2149, 1991 WL 126747 (E.D. Pa., July 10, 1991) ("The record reveals that the Christensens were aware that the Guaranty Agreement was a necessary predicate to the lease agreement. They were fully aware that the lease agreement pertained to commercial property located in Pennsylvania. In light of the Christensens' voluntary acceptance of the agreement, the relationship to Pennsylvania can in no sense be viewed as 'random' or 'fortuitous.'").

Based on similar reasoning, courts have exercised personal jurisdiction over nonresident defendants on the basis of the defendants' execution of an indemnification agreement. *See e.g., Abel v. Montgomery Ward Co., Inc.*, 798 F.Supp. 322 (E.D. Va. 1992); *Joseph v. Apache Stainless Equipment Corp.*, Civ. No. 97-1350, 1999 WL 301703 (E.D. La., May 11, 1999).

In *Abel*, the purchaser of a bicycle brought a personal injury action against Montgomery Ward, the retailer, as well as the Taiwanese manufacturer.  In finding that the exercise of personal jurisdiction over the manufacturer was appropriate, the court relied on the fact that the manufacturer agreed to indemnify and defend Montgomery Ward against suits for injuries arising out of the use of its merchandise. *Abel*, 798 F. Supp. at 325.  The court found that by including the provisions requiring the manufacturer to indemnify and defend Montgomery Ward, the manufacturer should reasonably have anticipated being haled into court in Virginia, where Montgomery Ward sold the manufacturer's products to consumers. *Id*. at 327.  *See also Newman*

*v. 1ˢᵗ 1440 Inv., Inc.*, Civ. No. 89-C-6708, 1990 WL 125369 (N.D. Ill., Aug. 22, 1990).

The District Court for the Eastern District of Louisiana's opinion in *Joseph v. Apache Stainless Equipment Corp.*—decided under markedly similar facts to those at issue—is consistent with Lumber Liquidators' position.  In *Joseph*, the plaintiff filed a personal injury action against Apache, a manufacturer of industrial mixers and blenders.  *Joseph*, 1999 WL 301703 at *1.  Apache had previously purchased the assets of Mepaco.  *Id*.  As part of the asset purchase agreement, Mepaco's sole shareholder, John Henebry, agreed to indemnify and defend Apache for any claims related to the product sold prior to the effective date of the asset purchase agreement.  *Id*.

As a result of the plaintiff's personal injury lawsuit, Apache named Mr. Henebry as a third-party defendant, based on the indemnification provision of the asset purchase agreement.  Mr. Henebry filed a motion to dismiss for lack of personal jurisdiction.  Despite Mr. Henebry stating that he never had *any* contacts with Louisiana, the court found that the exercise of jurisdiction over Mr. Henebry was appropriate.  *Id*. at *3.  In denying the motion to dismiss, the court stated:

> Mr. Henebry could have reasonably anticipated being haled into court in Louisiana after having executed the indemnification agreement. Mr. Henebry knew that he and his former company (Mepaco) had made products for which Mr. Henebry agreed to remain personally liable (within limits). Furthermore, the Court finds that requiring Mr. Henebry to defend this suit in Louisiana does not violate notions of fair play and substantial justice.

*Id*. at *3.

In Article VII of the Asset Purchase Agreement, the Individual Defendants agreed to "indemnify, protect, defend, exculpate and hold [Lumber Liquidators] and its members, managers, officers, employees and agents harmless from and against, and agree promptly to

defend [Lumber Liquidators] from and reimburse [Lumber Liquidators] for, any and all Losses," as defined in the Asset Purchase Agreement.  (*See* Asset Purchase Agreement ¶ 7.2.)  This was to specifically include product or warranty claims by customers of Lumber Liquidators related to products delivered by Sequoia prior to the closing date.  (*Id*. at ¶ 7.4.)

The Individual Defendants were well aware that Lumber Liquidators' principal office was located in Virginia, that a large amount of the product was warehoused and sold to the end user in Virginia, and that Lumber Liquidators was likely to be subject to lawsuits in Virginia for product or warranty claims related to products that were delivered prior to the closing date.  In fact, it is these exact claims that are the underlying basis for Lumber Liquidators' lawsuit and claim for indemnification.  As such, Lumber Liquidators' claims arise directly out of the Individual Defendants' agreement to indemnify and defend Lumber Liquidators in Virginia, and requiring the Individual Defendants to defend this suit in Virginia does not violate notions of fair play and substantial justice.  As such, Defendants' Motion should be denied.

## II.    Service on Defendants was Valid.

The return of a Certificate of Service by the Canadian Central Authority is *prima facie* evidence of valid service.  Even if that were not true, however, the documents show that service of process on Defendants was valid on their face.  As such, Defendants' Motion should be denied.

### A.    Plaintiffs have Presented *Prima facie* Evidence of Valid Service under the Hague Convention.

Defendants incorrectly argue that service of process was deficient under the Hague Convention, and therefore they should be dismissed.   "Service under both the Hague Convention and the Federal Rules of Civil Procedure is intended as 'a notice-giving device.'" *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), 2001 WL 34088810, *1 (D.D.C. Mar. 9, 2001) (citing

*Hagmeyer v. U.S. Dept. of Treasury,* 647 F.Supp. 1300, 1303 (D.C.Cir.1986); Fed.R.Civ.P. 4(f) (providing that service may be effected outside the United States "by any internationally agreed means ***reasonably calculated to give notice,*** such as those means authorized by the Hague Convention") (emphasis added).  Like personal jurisdiction, to survive a motion to dismiss based on pleadings and affidavits, a party need only present *prima facie* evidence of valid service of process.  *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992).

Article 2 of the Hague Convention provides for service from abroad through a "Central Authority." Hague Convention, Art. 2.  Each state's Central Authority is designated to receive judicial documents from parties abroad.  *Id.*  The Convention states that the "authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention."  *Id.* at Art. 3.  The annexed model specifies forms for a "Request for Service Abroad of Judicial or Extrajudicial Documents," a "Certificate" of service on the reverse of the request, a "Summary of the Document to be Served," and a cover sheet for the documents. The Central Authority checks the documents for compliance with the Convention, serves them in accordance with its own law, and returns to the party requesting service a certificate that the documents have been served. *Id.* at Arts. 4, 5, 6.

Through APS International, Ltd.,[1] Lumber Liquidators forwarded the required documents to the Canadian Central Authority. (*See* Requests for Service Abroad of Judicial or Extrajudicial Documents, attached as Exhibits E, F, and G.)[2]  Pursuant to Article 6, the Canadian Central

---

[1] APS International, Ltd. is the "world leader in legal support services," and has been assisting attorneys in international service of process for over thirty years.
http://www.civilactiongroup.com/

[2] Although the documents for each Defendant are essentially identical, the relevant documents for each have been attached.

Authority returned a certificate that stated that the required documents had been served, by a Bailiff of Justice of the Province of Quebec in Canada on September 26, 2103, on "Mrs. Carolyn Woodruff, logistics coordinator, a person in charge of the place of business at the time of serving." (*See* Certificates, attached as Exhibits H, I, and J.)

Defendants' contention that Plaintiffs have failed to meet their burden of showing valid service is without merit, as the return of a completed Certificate of Service by a Central Authority is *prima facie* evidence that the Authority's service on the defendant was made in compliance with that Central Authority's law. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995). "The Convention requires that the Central Authority serve the documents by a method specified by its own law or by the sender that complies with local law and reserves to the Central Authority the right to object to documents if they do not comply with the Convention." *Northrup King Co.*, 51 F.3d at 1390. By not objecting to the documents, and by certifying service, the Central Authority indicates that the documents comply with the Convention and that they have been served in compliance with the Convention (*i.e.*, that it made service in compliance with local law). *Id*. Courts will not look behind a valid certificate of service by a Central Authority to adjudicate the issues of that foreign body's procedural law on a motion to dismiss. *Id*.

To rebut this *prima facie* showing, a defendant must "establish that it lacked actual notice of the proceedings or that the purported technical deficiencies prejudiced [the] defendant in some significant way." *In re Vitamins Antitrust Litig.*, MISC. 99-197 (TFH), 2001 WL 34088810 (D.D.C. Mar. 9, 2001). *See also Am. Med. Sys., Inc. v. Biolitec, Inc.*, 604 F. Supp. 2d 325, 331 (D. Mass. 2009) ("A number of courts have held that certification of service by the Central Authority, absent any evidence that the target party lacked actual notice of the proceedings or

was otherwise prejudiced by deficiencies in service, constitutes *prima facie* evidence of sufficient service regardless of potential non-compliance with every jot and tittle of the Hague Service Convention.").

The Certificate of Service provided by Canada's Central Authority is *prima facie* evidence of valid service, which Defendants have not rebutted. Additionally, all of the Defendants received actual notice of the lawsuit and <u>plenty</u> of time to file responsive pleadings. In fact, the Defendants' Canadian attorneys received copies of the Complaint on May 19, 2013. From May 19 until the Complaint was served, counsel for the Plaintiffs and Defendants conversed extensively regarding the merits of the Complaint and resolution of the same.

Moreover, this Court entered two orders extending the Defendants' time to respond by an additional twenty-five (25) days. As such, any argument that the Defendants did not have notice or an adequate time to respond, or that they were prejudiced in any way is simply disingenuous. Therefore, the Defendants' Motion should be denied.

**B.      Defendants' Argument that Service was not Valid is Without Merit.**

Even if Plaintiffs' burden was not met through the Certificates of Service, Defendants' argument that service was invalid is without merit.

1.      <u>Service on the Individual Defendants was valid.</u>

Defendants incorrectly contend that service of process at the Individual Defendants' place of business was not valid.  (*See* Def. Mem. in Supp. at 10.)  The Quebec Rules of Civil Procedure, however, provide that "[i]f [the defendant] has no ***known*** domicile or ordinary residence within Québec, service may be made by leaving a copy of the proceeding in a sealed envelope addressed to the person for whom it is intended at the person's business establishment or place of work, speaking to a reasonable person in charge thereof." Q.R.S. C-25, § 123

(emphasis added).  Lumber Liquidators did not know the Individual Defendants' domicile or ordinary residence.[3]  As such, service at the place of work was appropriate.

Defendants' contention that Carolyn Woodruff was not a manager or officer, and therefore leaving a copy of the proceeding with her was not valid is equally unavailing.  (*See* Def. Mem. in Supp. at 10.)  Section 123 does not require that service be made on an officer or manager.  *See* Q.R.S. C-25, § 123.  Rather, the rule requires that "a copy of the proceeding in a sealed envelope addressed to the person for whom it is intended [be left] at the person's business establishment or place of work, ***speaking*** to a ***reasonable person in charge thereof***."  *Id.* (emphasis added).  Whether an "accounting clerk," as Defendants contend, or a "logistics coordinator," as sworn to on the Certificate of Service, leaving the proceeding with Mrs. Woodruff was sufficient as she was "a person in charge of the place of business as the time of serving," as confirmed by "verbal acknowledgement."  (*See* Certificate of Service).  This is all that is required for valid service.

2.      Service on Sequoia was valid.

In regard to service on Sequoia, Defendants again incorrectly allege that service was invalid because the Bailiff did not serve a "senior officer or person in charge of Sequoia."  (*See* Def. Mem. in Supp. at 11.)  Again, Defendants misread the Quebec Rules of Civil Procedure. Section 130 states that service may be made on a corporation "at its head office, at one of its establishments in Québec or at the establishment of its agent in the district where the cause of action has arisen, speaking to one of its senior officers or to a person ***in charge of the said establishment***."  Q.R.S. C-25, § 130 (emphasis added).  The person need not be "in charge" of

---

[3] There is an address for Daniel Benchetrit below his signature on the Asset Purchase Agreement; however, that Agreement is more than two years old, and after due diligence Lumber Liquidators cannot determine whether this is a valid, current address for Daniel Benchetrit. There is no address for Gerard Benchetrit listed in the Asset Purchase Agreement.

the company, as suggested by Defendants, but rather merely in charge of the establishment. Again, Mrs. Woodruff was "a person in charge of the place of business as the time of serving," as confirmed by "verbal acknowledgement," which is all that is required for valid service. (*See* Certificates of Service).[4] Plaintiffs' service of Defendants was valid under the Quebec Rules of Civil Procedure, and therefore Defendants' Motion should be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs Lumber Liquidators Leasing, LLC and Lumber Liquidators, Inc. respectfully requests this Court deny Defendants' Motion to Dismiss, and grant any such further relief it deems appropriate.

Respectfully submitted,

LUMBER LIQUIDATORS LEASING, LLC and
LUMBER LIQUIDATORS, INC.


_____*/s/ Andrew O. Mathews*_____
Patrick R. Hanes (VSB No. 38148)
W. Alexander Burnett (VSB No. 68000)
Andrew O. Mathews (VSB No. 77038)
WILLIAMS MULLEN
200 S. 10th Street, Suite 1600 (23219)
P.O. Box 1320
Richmond, VA  23218-1320
Phone (804) 420-6000
Fax: (804) 420-6507
aburnett@williamsmullen.com
phanes@williamsmullen.com

---

[4] Federal Rule of Civil Procedure 4(f) exists to put an end to dilatory tactics employed by international litigants. Federal courts have previously approved service on an attorney for an international defendant, service by publication, or service by certified mail.  Additionally, the 120-day requirement does not apply to foreign defendants.  As such, should the Court determine that service was insufficient, Plaintiffs respectfully request that this Court allow service on Defendants' attorney or, in the alternative, allow service by publication or by certified mail.

## Certificate of Service

I hereby certify that on this 26th day of November, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

William F. Krebs (VSB # 17347)
Rachelle Hill (VSB #74996)
BEAN, KINNEY & KORMAN
2300 Wilson Blvd., Seventh Floor
Arlington, VA  22201
Phone: 703.525.4000
Fax: 703.525.2207
wkrebs@beankinney.com
rhill@beankinney.com
*Counsel for Defendants Sequoia Flooring, Inc.*
*Daniel Benchetrit and Gerard Benchetrit.*

_____/s/ Andrew O. Mathews_____
Patrick R. Hanes (VSB No. 38148)
W. Alexander Burnett (VSB No. 68000)
Andrew O. Mathews (VSB No. 77038)
WILLIAMS MULLEN
200 S. 10th Street, Suite 1600 (23219)
P.O. Box 1320
Richmond, VA  23218-1320
Phone (804) 420-6000
Fax: (804) 420-6507
aburnett@williamsmullen.com
phanes@williamsmullen.com
*Counsel for Plaintiffs*

*23833855_3.doc*

-17-