**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | |
|---|---|
| LUMBER LIQUIDATORS LEASING, LLC et al., | ) ) ) |
|     **Plaintiffs,** | ) ) |
| v. | )  **CASE NO. 3:13-cv-00313-JRS** ) |
| SEQUOIA FLOORINGS, INC., et al. | ) ) |
|     **Defendants.** | ) |

**REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**
**AND INSUFFICIENT SERVICE OF PROCESS**

COME NOW *by Special Appearance*, Defendants Sequoia Floorings, Inc. ("Sequoia"), Daniel Benchetrit and Gerard Benchetrit (collectively, the "Individual Defendants"), by counsel, by relying on their opening brief, and in addition, by rebutting certain of Plaintiffs' points, as set forth below:

**A. The Indemnification Agreement Does Not Provide a Basis for this Court to Exercise Specific Jurisdiction over the Individual Defendants.**

Contrary to Plaintiffs' argument, the indemnification language in the Asset Purchase Agreement ("APA") is insufficient for the exercise of specific jurisdiction over the Individual Defendants in the Commonwealth of Virginia. The Opposition's argument is based on unsupported factual claims and misstates the terms of the APA and therefore this Court should disregard it.

Plaintiffs attempt to paint a picture that the APA specifically identifies the Lumber Liquidators Leasing, LLC's ("Lumber Liquidators") store in Virginia and that upon that basis the Individual Defendants should have anticipated being a party to a lawsuit in

Virginia. (Opp'n. P. 8). Plaintiffs state without any support that the Defendants agreed to indemnify Lumber Liquidators for products "they" sold to Lumber Liquidators "*in Virginia*" and that the Individual Defendants "knew a large amount of the product was both warehoused and sold to the end user [in Virginia]." (Opp'n. P. 8). This statement is overbroad and inaccurate. First, the Individual Defendants did not sell any products to Lumber Liquidators. Second, there is no language in the APA regarding claims "in Virginia" or regarding products warehoused in Virginia. Instead the APA includes broad language to cover product claims by a customer of Purchaser "relating to products delivered prior to the Initial Closing Date." (APA ¶ 7.4). The APA is for the sale of a Representative Office in the Republic of China and provides for application of the laws of Quebec and federal laws of Canada and the parties submitting to the non-exclusive jurisdiction of the courts of the Province of Quebec. (APA ¶¶ 1.1, 11.6, and 11.7). While it is reasonable for the Individual Defendants to anticipate a lawsuit in Canada or even China, there is nothing in the APA to provide notice as to the possibility of being hauled into court in Virginia. This is in direct contrast to the Escrow Agreement to which the Individual Defendants are not parties, where Lumber Liquidators, Sequoia and SunTrust Bank agreed to the exclusive jurisdiction of this Court for matters arising under that agreement. (Escrow Agreement § 7.9).

Additionally Lumber Liquidators has over 300 stores nationwide throughout the United States and only 12 of the 300 stores are located in Virginia. (See http://www.lumberliquidators.com/ll/storelocator screenshots, accessed 12/5/13, attached as Exhibit 1 hereto). A corporate office or warehouse in Virginia does not mean the majority of products are sold in Virginia so that the Individual Defendants would

2

anticipate suits in this jurisdiction, especially when over 288 Lumber Liquidator stores are located outside Virginia.

Even if this Court were to entertain this case on a specific jurisdiction basis, the suit should be limited to claims by Virginia customers, given the Plaintiffs specifically allege that the claims in Virginia are the "exact claims that are the underlying basis for Lumber Liquidators' lawsuit and claim for indemnification." (Opp'n. P. 11). The Complaint itself does not identify with any particularity the claims at issue or the dates the claims arose to give Defendants proper notice of the allegations.

**B.   There is No Exception to the General Rule that General Jurisdiction is not Conferred for Actions Taken by the Individual Defendants in a Corporate Capacity.**

Plaintiffs have failed to show any exception to the general rule that an individual cannot be subjected to general jurisdiction for acts taken in his or her corporate capacity unless he or she participated directly in a tort within the confines of this jurisdiction. In fact there is no applicable exception since the claims against the Individual Defendants are for breach of contractual obligations under the APA, not tort claims, and further there is no allegation that the Individual Defendants had any direct participation in the breach.[1] This Court specifically found after the cases cited by Plaintiff had been decided that the "fiduciary shield doctrine" was still applicable and instructive. *A.T. Massey Coal Co. v. Rudimex GmbH*, 2006 U.S. Dist. LEXIS 1882, 11-12 (E.D. Va. Jan. 9, 2006) (Spencer, J.). This doctrine provides "'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for

---

[1] While Count I is entitled "express indemnity," the basis for any suit against the Individual Defendants is the APA since absent the APA the Individual Defendants have no obligation to Lumber Liquidators and there is no basis for Plaintiffs' attorneys' fee request.

jurisdiction over him in his individual capacity.'" *Id.* (dismissing an individual defendant where the Plaintiff did not show any applicable exception to the doctrine.); *see also Grober v. Mako Prods.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) ("The fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state.").

Given that the Individual Defendants have not personally availed themselves of the privileges of doing business in Virginia, a claim for general jurisdiction is inappropriate. The activities Plaintiffs allege constitute the grounds for general jurisdiction were all undertaken by the Individual Defendants in a corporate capacity on behalf of Sequoia and have no relation to the APA. The Individual Defendants did not travel to Virginia at any point with respect to discussions or negotiations pertaining to the APA. (D. Benchetrit ¶ 18; G. Benchetrit ¶ 18). The only in-person meeting that took place regarding the APA was in Montreal when Lumber Liquidators did its due diligence. (G. Benchetrit ¶ 19). Any exposure to them as owners under the indemnity clause in the APA does not arise from acts taken by the Individual Defendants as corporate officers.

### C. Actual Notice In Lieu of Complying with the Formalities of the Hague Convention Does Not Constitute Valid Service.

Plaintiffs urge this Court to adopt the reasoning in other districts that a Court should not look beyond an alleged "valid certificate of service by a Central Authority" in determining whether service was effective and that even if there is an issue, actual notice excuses "technical deficiencies." (Opp'n. P. 13). Notably there is no opinion in this jurisdiction that stands for either of the foregoing propositions and Plaintiffs solely rely on three opinions from the 8th Circuit, the United States District Court of Massachusetts and the United States District Court of the District of Columbia for their argument.

(Opp'n. P. 13 citing *Northtrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1390 (8th Cir. 1995), *In re Vitamins Antitrust Liti.,* MISC 99-197 (TFH), 2001 WL 34088810 (D.D.C. Mar. 9, 2001) and *Am. Med. Sys., Inc.,* 604 F. Supp. 2d 325, 331 (D. Mass. 2009)).  Contrary to the cases cited by Plaintiffs, a 2012 Western District of North Carolina opinion specifically addressed service in Canada and held that "confirmation of services by the Central Authority" was not sufficient to raise a "presumption of proper service." *Labelle v. Martin*, 2012 U.S. Dist. LEXIS 121016, 4-5 (W.D.N.C. Aug. 27, 2012).  The *Labelle* court also held that actual notice of a lawsuit does not excuse formal compliance with service requirements. *Id.*; *see also  Lebel v. Mai*, 210 Cal. App. 4th 1154, 1161 (Cal. App. 2d Dist. 2012) (citing a string of California opinions that find in all cases where the **Hague** Convention applies, "[f]ailure to comply with the [Hague] Convention renders the service void, even if the defendant has actual notice of the lawsuit.").

This Court should follow the reasoning set forth in the *Labelle* opinion and find that service in this matter is insufficient as such reading is most compatible with the actual terms of the Hague Convention that do not provide an "actual notice" savings clause.  To adopt Plaintiffs' conclusion would render certain sections of the Hague Convention void.  Specifically Article 15 provides that when a document has been transmitted under the terms of the Hague Convention and Defendant has not appeared, judgment shall not be entered unless it is established that:

   a)  the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

   b)  the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

Hague Convention, Art. 15. Under Plaintiffs' argument, the Court would never need to inquire as to the above two if it had a valid certificate of service, even if the underlying facts on which the certificate is based are inaccurate as was the case in *Labelle* where by affidavit the Defendant showed he did not reside at the address indicated on the certificate and that he never had a roommate as identified in the certificate. A foreign Central of Authority is not in a position to object to service where the documents provided indicate proper service under its laws were effectuated, as is the case in this matter, where the documents filed show that Ms. Woodruff is a "person in charge of the place of business at the time of serving." (See Affidavits attached as Exhibits H, I and J to Opp'n.).

In this matter, whether service is effective must be determined by looking at Canadian law. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 701 (U.S. 1988) ("The negotiating history of the Convention also indicates that whether there is service abroad must be determined by reference to the law of the forum state.") As previously outlined, the Québec Rules of Civil Procedure govern this matter and provide that service may be effectuated by personal delivery, at a person's residence by leaving a copy with a reasonable person, or if **no known domicile** is within Québec, then by leaving a copy in a sealed envelope addressed to the person for whom it is intended at the person's business, "speaking to a reasonable person in charge thereof." Q.R.S. C-25, § 123 (emphasis added). For a corporation, service must be made by delivering a copy to the head office "by speaking to one of the company's senior officers or person in charge of the establishment." Q.R.S. C-25, § 130. Ms. Woodruff was a logistic coordinator and was not in charge of the establishment where the service was delivered. (D. Benchetrit

6

Decl. ¶ 18; G. Benchetrit Decl. ¶ 17.)  The return of service also is void of any language indicating that the process server spoke to a "**reasonable** person in charge" as required under Q.R.S. C-25, § 123.[2]

## CONCLUSION

On the basis of the foregoing, Defendants Sequoia Floorings, Inc., Daniel Benchetrit, and Gerard Benchetrit respectfully request this Court to grant their Motion, dismiss this action as against them with prejudice and for any further relief deemed just and proper by this Court.

Respectfully submitted,

By:  /s/ Rachelle E. Hill
    William F. Krebs, Va. Bar No. 17347
    Rachelle Hill, Va. Bar No. 74996
    wkrebs@beankinney.com
    rhill@beankinney.com
    BEAN, KINNEY & KORMAN, P.C.
    2300 Wilson Blvd., Seventh Floor
    Arlington, VA 22201
    Phone:  703-525-4000
    Fax:    703-525-2207
    *Counsel for Defendants Sequoia Floorings,*
    *Inc., Daniel Benchetrit and Gerard*
    *Benchetrit*

---

[2]  Of note, the affidavit wrongfully identifies "Gerald Benchetrit" as the person served, not the proper name "Gerard."  (*See* Certificates of Service).

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of December 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to the following:

Patrick R. Hanes (VSB No. 38148)
W. Alexander Burnett (VSB No. 68000)
Andrew O. Matthews (VSB No. 77038
WILLIAMS MULLEN
200 S. 10th Street, Suite 1600 (23219)
P.O. Box 1320
Richmond, VA 23218-1320
Phone (804) 420-6000
Fax: (804) 420-6507
aburnett@williamsmullen.com
phanes@williamsmullen.com
amathews@williamsmullen.com
*Counsel for Plaintiffs*

/s/ Rachelle E. Hill
Rachelle E. Hill