UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

LUMBER LIQUIDATORS LEASING, LLC, *et al.*,

**Plaintiffs,**

v.

SEQUOIA FLOORINGS, INCORPORATED, *et al.*,

**Defendants.**

Action No. 3:13-CV-313

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process ("Motion") (ECF No. 11). Defendants move the Court to dismiss, in whole or in part, a Complaint filed by Plaintiffs Lumber Liquidators Leasing, LLC ("Leasing"), and Lumber Liquidators, Incorporated ("LLI"), which seeks declaratory judgment regarding Defendants' obligation to indemnify Plaintiffs and Plaintiffs' rights to distribution of certain funds currently held in escrow. A hearing was held on January 10, 2014. For the reasons that follow, the Court will DENY the Motion to Dismiss.

## I. BACKGROUND[1]

Gerard Benchetrit and Daniel Benchetrit (collectively, "Individual Defendants") are owners, employees, and the controlling shareholders of Sequoia Floorings, Incorporated ("Sequoia"), a Canadian corporation with its principal place of business in Laval, Quebec. The Individual Defendants are citizens and residents of Canada. Sequoia sold wood flooring and accessories to Plaintiffs from at least 2005 until 2011. During the course of this relationship,

---

[1] On this Motion to Dismiss, all facts alleged in the Complaint and the affidavits appended thereto are accepted as true, in addition to any provable facts consistent with those factual allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Gerard Benchetrit travelled to Virginia four to six times per year in his capacity as Sequoia's Secretary and Director. Daniel Benchetrit, Sequoia's President and Director, travelled to Virginia on six separate occasions during the latter years of this business relationship.

Both LLI and Leasing are business organizations registered in Delaware with principal places of business in Toana, Virginia. In 2011, Leasing entered into two agreements with Defendants to facilitate the purchase by Plaintiffs of certain assets located at Sequoia's Shanghai Representative Office in the Republic of China. The Shanghai Representative Office is a manufacturing plant, which was operated for many years by Sequoia with Plaintiffs as the sole customer.

The first agreement, an Asset Purchase Agreement ("APA"), was signed both by Sequoia and by each of the Individual Defendants in his individual capacity. The APA requires all three Defendants to severally indemnify and defend Leasing from all losses that Leasing incurred as a result of, or in connection with, any of Defendants' obligations.[2] Under the APA, the Parties submitted to the non-exclusive jurisdiction of the courts of the Province of Quebec, and the laws of the Province of Quebec were to govern the APA's provisions.

The second agreement, an Escrow Agreement, was signed only by Sequoia and purported to set aside a portion of the APA purchase price to reimburse Leasing for any product claims or for Defendants' indemnity obligations. The amount provided for in the Escrow Agreement ("Escrow Amount") was $120,000. In the event that the Escrow Amount is insufficient to reimburse Leasing for any losses, the APA provides that Leasing may pursue other remedies, namely indemnification. (*See* APA §§ 1.4(iv), 7.9.) Under the Escrow Agreement, Sequoia

---

[2] The APA has one provision requiring Defendants to indemnify Leasing for losses arising from "[a]ny and all obligations of any [Defendant] of any nature whatsoever." (APA § 7.2.) This broad provision includes a reference to liabilities with respect to "claims." A subsequent section of the APA, section 7.4, creates a procedure by which Leasing could be reimbursed from the Escrow Amount for successful product or warranty claims made against "products delivered prior to the Initial Closing Date." While the APA does not define "products," the parties indicated at the hearing that these products included lumber that Sequoia was obligated to deliver to Plaintiffs prior to the APA closing date.

submitted to the exclusive jurisdiction of the Eastern District of Virginia.

Prior to and during the negotiations of the APA and the Escrow Agreement, the Individual Defendants sent or received thousands of emails from Plaintiffs, took part in numerous phone calls with Plaintiffs, and were substantially involved in many transactions between Sequoia and Plaintiffs. From January 2009 until September 2011, Plaintiffs purchased more than $380,000,000 in wood flooring and accessories from Sequoia. However, the Individual Defendants were, and continue to be, citizens and residents of Canada.

Plaintiffs allege that after entering into the APA, they incurred losses as a result of Defendants' obligations. Specifically, Plaintiffs aver that Sequoia supplied materials to Plaintiffs with various manufacturing defects. Plaintiffs' customers made claims as a result of these manufacturing defects, from which Plaintiffs allege that they have suffered losses.

On May 17, 2013, Plaintiffs filed a two-count Complaint requesting declaratory judgment. Count One requests a declaration enforcing Defendants' alleged obligation to indemnify Plaintiffs for $500,000 in losses arising from Sequoia's delivery of allegedly defective materials. Count Two requests a declaration that Plaintiffs have complied with the provisions of the APA and the Escrow Agreement and, as a result of the losses previously described, that Plaintiffs are entitled to disbursement of the Escrow Amount.

Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Plaintiffs forwarded the required documents for service of process to the Canadian Central Authority so that service could be effectuated by "a method prescribed by [Canada's] internal law." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, Art. 5, 20 U.S.T. 361, [hereinafter Hague Convention]. Plaintiffs requested that service be made on all three Defendants at Sequoia's headquarters in Laval, Quebec. Pursuant to Article 6 of the Convention, the Canadian Central Authority returned a certificate that stated that the required documents had been served on

September 26, 2013, on "Mrs. Carolyn Woodruff, logistics coordinator, a person in charge of the place of business at the time of service."

Although Defendants have moved the Court to dismiss the Complaint on the basis of insufficient service of process, Plaintiffs assert that Defendants have received actual notice of this action and have not been prejudiced by any alleged deficiencies of service of process. Plaintiffs assert that Defendants' Canadian counsel received copies of the Complaint on May 19, 2013, and that since that date, counsel for Plaintiffs and Defendants conversed extensively regarding the merits and possible resolution of the Complaint.

## II.   LEGAL STANDARD

Personal jurisdiction is the power of a court "to bring a person into its adjudicative process." *Noble Sec., Inc. MIZ Eng'g, Ltd.*, 611 F.Supp.2d 513, 525 (E.D. Va. 2009). Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant can challenge the court's personal jurisdiction over the particular defendant. Fed. R. Civ. P. 12(b)(2). Such a challenge raises a question of fact for the judge, and the plaintiff bears the burden of proving the court's jurisdiction over each defendant.  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). A reviewing court may decide the jurisdictional question on the basis of a separate evidentiary hearing, or evidence received at trial, or "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 426 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Where the issue is to be decided without an evidentiary hearing, the plaintiff need only make a *prima facie* showing of a jurisdictional basis. *New Wellington Fin. Corp.*, 416 F.3d at 294. The Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (citation omitted).

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citations omitted). Virginia's long-arm statute "is intended to extend personal jurisdiction to the extent permissible under the due process clause," *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009), hence, "the statutory and constitutional inquiries coalesce into the question of whether [defendants] had sufficient minimum contacts with Virginia to satisfy due process requirements." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).

To satisfy this due process inquiry, the defendants must have "certain 'minimum contacts' with [Virginia] such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The nature of the suit and the non-resident defendant's contacts with the forum state determine whether a court may assert general or specific jurisdiction. "When a defendant's contacts with the forum state are continuous and systematic, irrespective of whether the transaction in question had sufficient contacts with the state, a court may exercise *general* personal jurisdiction over the defendant." *Diamond Healthcare of Ohio, Inc.*, 229 F.3d at 450. "In the absence of continuous and systematic contacts, a court may still exercise *specific* personal jurisdiction when the contacts relate to the cause of action and create a substantial connection with the forum state." *Id.*

"[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (4th Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)) (internal quotation

marks omitted). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell*, 152 F.3d 304 (4th Cir. 1998) (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). However, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco*, 733 F.2d at 1089. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, a foreign corporation or individual may be properly served in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Fed. R. Civ. P. 4(f)(1), (h)(2).

## III.   DISCUSSION

Defendants move the Court to dismiss the Complaint in whole or in part on two distinct grounds. First, the Individual Defendants assert that the Court lacks personal jurisdiction over them. Second, Defendants argue that neither the Individual Defendants nor Sequoia was served in accordance with the Hague Convention, and therefore, the Complaint should be dismissed in its entirety.

### A.   PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

The Individual Defendants each travelled to Virginia between six and thirty-six times to engage in business with a Virginia corporate citizen. In their individual capacities, they entered into a contract with that corporation, and the interpretation of that contract is at issue in this litigation. For these reasons, the Court holds that it may properly exercise specific personal jurisdiction over the Individual Defendants.[3]

---

[3] Because this holding is dispositive of the Motion, the Court does not reach the question of whether the Individual Defendants' contacts with Virginia are sufficient to make the exercise of general personal jurisdiction appropriate.

*In personam* jurisdiction may be asserted over a nonresident defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. When a controversy is related to or arises out of a defendant's contacts with the forum, the Court has said that a relationship among the defendant, the forum, and the litigation is the essential foundation of [] *in personam* jurisdiction." *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984) (internal citations and quotation marks omitted). In such a controversy, the court is said to exercise specific jurisdiction over the defendant. *Id.* at 414 n.8. The Fourth Circuit requires consideration of three factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan., Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citations omitted). The court must also determine that jurisdiction is authorized under Virginia law. However, because the Virginia Long-Arm Statute, Va. Code § 8.02-328.1, authorizes jurisdiction to the full extent of the Due Process Clause, the court's statutory determination merges into the constitutional analysis. *See Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).

Under the first factor, it is apparent that the Individual Defendants purposefully availed themselves of the privilege of conducting activities in Virginia. The Fourth Circuit instructs that the court must look to several factors to determine whether a defendant has engaged in purposeful availment. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Notable among these are "whether the defendant reached into the forum state to solicit or initiate business, whether the defendant deliberately engaged in significant or long-term business activities in the forum state, . . . whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, [and] the nature,

quality and extent of the parties' communications about the business being transacted." *Id.* Although it is unclear who initiated the business relationship between Plaintiffs and Sequoia, the Individual Defendants deliberately engaged in a long-term business relationship with Plaintiffs, selling more than $380 Million in wood flooring and accessories from 2009 to 2011. Additionally, both Individual Defendants made in-person contact with Plaintiffs in Virginia regarding their business relationship. This business relationship included sales of the products of which defect liability was allegedly indemnified under the APA. Finally, the Individual Defendants communicated extensively with Plaintiffs regarding various business transactions via phone, email, and in person.

Under the second factor, it is apparent that Plaintiffs' claims arise from or are related to the conduct which the Individual Defendants directed at Virginia. The Individual Defendants signed the APA in their personal capacities, thereby entering into a contract with a Virginia corporate citizen. The APA primarily concerns the purchase and sale of certain assets associated with Sequoia's Shanghai Representative Office.[4] However, the APA additionally represents that Defendants will be severally and not jointly liable for "[a]ny and all obligations of any [Defendant] of any nature whatsoever" including product claims. (APA § 7.2.) Plaintiffs have alleged that the APA intended these claims to include customer claims for warranty defects on materials delivered by Sequoia prior to a certain date. As such, Plaintiffs' claims arise from obligations the Individual Defendants undertook pursuant to the APA. Additionally, the Individual Defendants' conduct in their corporate capacities was intended to foster sales of Sequoia's products to Plaintiffs, which are Virginia corporations warehousing and selling their product to customers in Virginia. Plaintiffs allege that they have incurred losses arising from Sequoia's sale of defective product and for which the Individual Defendants are liable under the

---

[4]  The Individual Defendants correctly note that the APA's place of performance is not in Virginia. While this fact may be pertinent to a choice of law analysis, it is not dispositive of whether this Court may exercise personal jurisdiction over the Individual Defendants.

APA. For both of these reasons, the Plaintiff's claims arise from or are related to activities that the Individual Defendants directed at Virginia.

Under the third factor, it is apparent that the exercise of personal jurisdiction is constitutionally reasonable. "[W]here the defendant 'deliberately' has engaged in significant activities within a State or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal citations omitted). Additionally, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. The Individual Defendants created a continuing obligation to indemnify a corporate citizen of Virginia and sold substantial quantities of consumer products for resale in Virginia and elsewhere. As such, the exercise of personal jurisdiction over the Individual Defendants is not constitutionally unreasonable, and Defendants have offered nothing more than conclusory assertions to argue that jurisdiction would be unreasonable.

Plaintiffs' attempts to argue that the Court lacks personal jurisdiction over the Individual Defendants are unavailing. First, the Individual Defendants cannot successfully argue that their obligations under the APA are unrelated to the conduct they directed at Virginia. Although some of the Individual Defendants' conduct may not have been related to negotiation of the APA, it was related to the sale of products to Plaintiffs, for which the Individual Defendants allegedly contracted to indemnify Plaintiffs pursuant to the APA. Courts in this and other districts have determined that indemnification agreements are sufficient to warrant personal jurisdiction over a nonresident defendant. In *Abel v. Montgomery Ward Company, Incorporated*, the court

found that it could exercise personal jurisdiction over a nonresident defendant. 798 F. Supp. 322. The injured purchaser of a bicycle sued both a retailer and a Taiwanese manufacturer. The court found that by signing an indemnification agreement, the manufacturer could reasonably expect to be haled into court in Virginia, where the retailer was known to sell the manufacturer's products to consumers. *Id.* at 327. Similarly, in *Joseph v. Apache Stainless Equipment Company*, a plaintiff sued a manufacturer of industrial mixers, who had just purchased the assets of a foreign corporation. 1999 WL 301703. When the defendant sued the foreign corporation as a third-party defendant, the court found that the foreign corporation's agreement to indemnify the defendant pursuant to an asset purchase agreement was sufficient to confer personal jurisdiction, even where the foreign corporation had no other contact with the forum state. *Id.* at *1, 3. In contrast, Plaintiff has cited no cases in which a court found personal jurisdiction improper despite an agreement to indemnify another party in suit.

Second, the fiduciary shield doctrine cannot protect the Individual Defendants from the authority of this Court. "The fiduciary shield doctrine is not available where the forum state's long-arm statute is 'coextensive with the full reach of due process.'" *Pittsburg Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) (quoting *Columbia Briargate Co. v. First National Bank*, 713 F.2d 1052, 1064 (4th Cir. 1983)). Quite simply, the doctrine does not apply in Virginia, where the long-arm statute, Va. Code § 8.02-328.1, authorizes jurisdiction to the full extent of the Due Process Clause. Additionally, the Individual Defendants' reliance on *D'Addario v. Geller*, 264 F. Supp. 2d 267 (E.D. Va. 2003), is misplaced. Plaintiffs correctly point out that the Individual Defendants are not "immune from jurisdiction in Virginia merely because [their] contacts with the Commonwealth were made ostensibly on behalf of [Sequoia]." 264 F. Supp. 2d at 381 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Instead, a corporate officer's actual contacts with the forum are assessed, and jurisdiction may be proper "even if those contacts were made ostensibly on behalf of [a corporation]." *Id.* (quoting *ePlus Tech., Inc. v. Aboud*, 313 F.3d

166, 177 (4th Cir. 2002)). As already explained, the conduct of the Individual Defendants is sufficient to bring them within the authority of the Court.

B.   INSUFFICIENT SERVICE OF PROCESS

Federal Rules of Civil Procedure 4(f)(1) and 4(h)(2) require Plaintiffs to effectuate service in accordance with the Hague Convention, "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. Under Article 5 of the Hague Convention service is to be effectuated by the Central Authority of a signatory state by "a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." *Id.*, Art. 5. Defendants do not dispute that Plaintiffs transmitted the documents required for service to Canada's Central Authority, which was then required to serve those documents in accordance with Canadian law. Upon service, the Central Authority issued Certificates of Service indicating the manner, means, and date that service was effectuated.

While the Fourth Circuit has not yet interpreted the effect of a Central Authority's Certificate of Service on a motion to dismiss pursuant to Rule 12(b)(5), at least one other circuit court has held that a Certificate of Service issued pursuant to the Hague Convention constitutes prima facie evidence of valid service.[5] *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383 (8th Cir. 1995). In so holding, the Court noted that the plaintiffs had complied with the requirements of the Hague Convention and declined to "go behind" the Certificate of Service to determine whether the Central Authority had served all

---

[5] Failure to obtain proper service deprives the court of personal jurisdiction over a defendant. *See Koehler v. Dodwell*, 152 F.3d 304 (4th Cir. 1998). On a pretrial motion to dismiss on the papers, a plaintiff need only make a prima facie showing of a sufficient jurisdictional basis. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). It follows, therefore, that on such a motion, a plaintiff also need only make a prima facie showing that service was proper. Nevertheless, a "threshold *prima facie* showing that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence." *Prod. Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004) (citing *Marine Midland Bank, N.A. v. Miller*, 667 F.2d 899, 904 (2d Cir. 1981)).

documents forwarded to it for service.[6] *Id.* The court noted that the defendant made no showing that it had not received actual notice or been prejudiced in any way. *Id.* Subsequently, at least one other court has relied on this reasoning to conclude that a defendant "must establish that it lacked actual notice of the proceedings or that the purported technical deficiencies prejudiced this defendant in some significant way." *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), 2001 U.S. Dist. LEXIS, at *21 (D.D.C. Mar. 9, 2001).

"The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." 4 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1063 (3d ed.). In this case, Defendants have not alleged that they lack notice of the lawsuit or that they have been prejudiced in any way by the alleged defects in service. While Defendants have submitted affidavits stating that Ms. Woodruff is not a senior officer or manager of Sequoia, they have offered no evidence that she was not a reasonable person in charge of the business at the time of service. Additionally, Defendants have not asserted that Plaintiffs themselves failed to comply with the Hague Convention, but only that Canada's Central Authority failed to serve process as required by Canadian law.[7] As such, the Court finds that Plaintiffs have made a prima facie showing that service was valid by virtue of the Certificate of Service, and that Defendants have failed to rebut this prima facie showing.

Defendants' arguments to the contrary are unpersuasive. First, crediting a Certificate of Service as evidence of valid service is in no way inconsistent with Article 15 of the Hague Convention; to the contrary, the interpretation of the Eighth Circuit is entirely consistent with this provision. Article 15 ostensibly applies to entry of a default judgment against parties who

---

6 At issue was whether a summary, which had been forwarded to the Central Authority for service, had actually been served. *Id.*
7 The Court declines to consider whether the alleged defective service is in derogation of Canadian law. Neither party cites to any authority beyond the statutory text itself. Absent further authority, the Court "declines to look behind the certificate of service to adjudicate the issues of [Canadian] procedural law that the parties have raised." *Northrup King Co.*, 51 F.3d at 1390.

have failed to appear before a court. Article 15 requires either valid service or actual notice of the lawsuit, as well as a showing that a defaulting defendant has not been prejudiced by a deficiency of service. These are the very considerations the Eighth Circuit took into account in *Northrup King Company*. *See* 51 F.3d at 1389-90. In the face of allegations that the service, as evidenced by the Certificate of Service, was not actually valid, the court relied on a showing that defendants had actual notice of suit and were not prejudiced by the alleged deficiencies. *Id.* This reasoning is consistent with the aims of the Hague Convention, generally, and with Article 15, specifically.

Second, the authorities cited by Defendants are distinguishable on their facts. In *Labelle v. Martin*, No. 3:12-CV-239-GCM, 2012 U.S. Dist. LEXIS 121016, at *4-5 (W.D.N.C. Aug. 27, 2012), the court quashed service where the Canadian Central Authority left service of process with an electrician who mistakenly indicated that the defendant resided at that address. 2012 U.S. Dist. LEXIS 121016, at *3-4. In determining that service was insufficient, despite the existence of a Certificate of Service, the court noted that "there is no dispute that service was not made at [the defendant's] residence." *Id.* at *6. Unlike in *Labelle*, there is no patent error on the Certificate of Service.[8] Additionally, the California cases cited by Defendants are inapposite. This line of cases appears to stand only for the proposition that a plaintiff may not avoid the requirements of the Hague Convention entirely, such as by attempting to serve a foreign defendant by certified mail. *See, e.g.*, *Lebel v. Mai*, 210 Cal. App. 4th 1154, 1161 (Cal. App. 2d Dist. 2012).

---

[8] Defendants argue that service—and in fact, the Complaint—names Gerald Benchetrit as a defendant, while his name is actually Gerard Benchetrit. Courts have long held, however, that such a misspelling is insufficient to justify dismissal where it was "a mere misnomer that injured no one, and there is no reason why it should not [be] corrected by amendment." *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 874 (4th Cir. 1947); *see also Grannis v. Ordean*, 234 U.S. 385, 395 (1914) ("The 'due process of law' clause, however, does not impose an unattainable standard of accuracy. If a defendant within the jurisdiction is served personally with process in which his name is misspelled, he cannot safely ignore it on account of the misnomer.").

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that the Individual Defendants are subject to the personal jurisdiction of this Court and that Defendants have failed to rebut Plaintiffs' prima facie showing that service of process was valid. Accordingly, the Court will DENY the Motion to Dismiss.

Let the Clerk send a copy of this Order to all counsel of record.

It is so ORDERED.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___24th_____ day of January 2014.

14